UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Meecorp Capital Markets, LLC, a New Jersey limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Timothy J. Oliver, *et al.*,<br><br>Defendants. | Civil No. 09-2067 (DWF/RLE)<br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

---

Daniel N. Rosen, Esq., and Douglas G. Wardlaw, Esq., Parker Rosen, L.L.C., counsel for Plaintiff.

Richard M. Carlson, Esq., Morris Law Group, P.A., counsel for Moving Defendants.[1]

Todd H. Johnson, Esq., Oliver & Johnson, PA, counsel for Non-moving Defendants Timothy J. Oliver and Christopher M. Anderson.

---

## INTRODUCTION

This matter is before the Court on certain Defendants' motion to dismiss (Doc. No. 17). For the reasons stated below, this Court denies the motion.

---

[1] The Moving Defendants include Gandolf Holdings, LLC; Gandolf Group, LLC; the Pledged Companies (*see infra* note 5) and the Limited Partnerships (*see infra* note 6).

## FACTUAL AND PROCEDURAL BACKGROUND

As alleged in the Amended Complaint (and the loan documents attached to that pleading), in June 2005, Plaintiff Meecorp Capital Markets, LLC, loaned $1.32 million to Defendant PSC of Two Harbors, LLC, a company owned (in equal 50% shares) by Defendants Timothy Oliver and Christopher Anderson.[2] In addition to the Loan Agreement itself, PSC executed a promissory note as well as a mortgage granting Meecorp a first lien and security interest in certain real property. Oliver, as Chief Manager of PSC, signed the Loan Agreement, the Promissory Note and Mortgage.

Oliver and Anderson personally guaranteed the loan by executing a Joint Guaranty. (Doc. No. 7, Ex. D.) As further security for the loan, Defendant Gandolf Holdings, LLC, (then known as Gandolf Group, LLC) a company owned in part by Oliver, also executed a guaranty of the loan (the "Gandolf Guaranty"). (*Id.*, Ex. E.)[3]

---

[2] Many of the entity defendants at issue here are Limited Liability Companies (LLCs). Such entities share certain similarities with corporations, but with the following differences in nomenclature: (1) whereas ownership of a corporation is represented by shares of stock, ownership of a LLC is represented by "membership interests"; (2) whereas a corporation is thus owned by shareholders, a LLC is thus owned by "members"; (3) whereas a corporation is governed by a board of directors, a LLC is governed by a "board of governors"; and (4) whereas a corporation is run by officers, a LLC is run by "managers." Minn. Stat. Ch. 322B, Reporter's Notes (1992). The managers must include including a "chief manager." Minn. Stat. § 322B.67.

[3] Defendants include numerous entities with similar names. To complicate matters further, several of these entities have changed their names since the relevant events occurred. Moreover, in at least one instance, the present name of one entity is the former name of a different entity. In particular, what used to be Gandolf Group, LLC, became Gandolf Holdings, LLC, in January 2008. (Doc. No. 7, ¶ 5.) The entity presently
(continued...)

Oliver, along with Anderson, signed the Joint Guaranty, and Oliver, as Chief Manager of Gandolf Holdings, signed the Gandolf Guaranty.

To secure these guarantees, Oliver and Anderson executed a Joint Pledge Agreement pledging their respective interests in PSC. (Doc. No. 7, ¶¶ 50-51; *id.*, Ex. F.) In addition, Oliver, on behalf of himself and as Chief Manager of Gandolf Holdings, executed pledge agreements (the Oliver Pledge Agreement and Gandolf Pledge Agreement, respectively) granting security interests (the Pledged Interests) in Oliver's and Gandolf Holding's membership interests in numerous limited liability companies (the Pledged Companies). (*Id.*, ¶¶ 56-57; *id.*, Exs. G & H.) Of key importance here, Oliver and Gandolf Holdings represented that the Pledged Companies owned real estate that produced significant income. (*See id.*, ¶¶ 96, 118-19, 122-23.)

After PSC defaulted on the loan, Meecorp was unable to obtain payment under the personal guaranties of Oliver and Anderson as well as under the Gandolf Guaranty. Accordingly, Meecorp pursued the Pledged Interests and, in August 2009, filed this action against PSC, Gandolf Holdings, LLC (identifying it by its former name, Gandolf Group, LLC); Oliver; and Anderson–in essence, the parties with which Meecorp had

---

³(...continued)
known as Defendant Gandolf Group, LLC, was formerly known as Gandolf Development, LLC. (*Id.*, ¶ 6.) Unfortunately, although the Complaint, by necessity, is captioned in terms of the present names of the relevant entities, Plaintiff otherwise uses the names in effect at the time the transactions occurred in 2005 (presumably to facilitate easy reference to the documents evidencing the 2005 transaction). By obvious necessity, however, this Order will refer to any entity by its present name.

directly contracted. Meecorp alleged three counts: (1) PSC's breach of the note; (2) Oliver's and Anderson's breach of the joint guaranty; and (3) Gandolf Holding's breach of the Gandolf Guaranty. (Doc. No. 1.)

Meecorp then learned that the Pledged Companies did not in fact directly own the real estate that Oliver and Gandolf Holdings had claimed those companies owned. Rather, the Pledged Companies were only general partners in limited partnerships that were the actual owners of the properties.[4] And while the properties produce income for the limited partnerships, the general partners of those partnerships allegedly receive little of it.

Meecorp thus amended its Complaint to add numerous additional defendants: Gandolf Group, LLC (formerly known as Gandolf Development, LLC, and before that as Red Cedar Estates, LLC); Gandolf Holdings, LLC (which it had previously named as Defendant Gandolf Group, LLC); PSC Funding, LLC (a company related to PSC of

---

[4] Generally, each of the Pledged Companies, organized as Limited Liability Companies, was the general partner in, and owner of a fractional interest of, a limited partnership that usually shared a similar name. For example, Black Hawk Village Development, LLC, was the general partner of Black Hawk Village, LP. Moreover, each of the LLCs usually had only two members, Gandolf Holdings, LLC, and Oliver, with the Gandolf entity holding a 49% governance interest and a 100% financial interest and Oliver holding a 51% governance interest. (Some variations exist. For example, with respect to Green Street Estates Development, LLC, and South Creek Village Development, LLC, Gandolf Holdings held a 49% governance and financial interest while Oliver held a 51% governance and financial interest.)

Two Harbors and owned in part by Oliver); the Pledged Companies[5]; and the property-holding Limited Partnerships.[6] (Doc. No. 7.)

Oliver's connections to the various entity Defendants are thus extensive and widespread. He owns 51% of Gandolf Holdings and is its Chief Executive Officer, owns 50% of PSC and is its Chief Manager, and owns 20% of PSC Funding and is its Chief Executive Officer. PSC Funding in turn holds a 99% interest in Gandolf Holdings, while Oliver holds the remaining 1%. Oliver also has managerial and/or ownership interests in the Pledged Companies, the numerous LLCs that serve as the general partners of the limited partnerships that allegedly actually own the income-producing properties.

Meecorp also added additional claims by (1) amending Count III to also allege breach of the Gandolf Guaranty by new defendant Gandolf Holdings, LLC (the original

---

[5] The Pledged Companies include the following fifteen entity Defendants, each organized as a Limited Liability Company: Black Hawk Village Development, LLC; Blue Springs Village Development, LLC; Brandon Heights Village Development, LLC; Brandon Heights Village II Development, LLC; Lakewood Village Development, LLC (formerly known as Evergreen Heights Development, LLC); Gilcrease Hills Estates Development, LLC; Green Street Estates Development, LLC; Orleans Terrace Development, LLC; Pine Crest Village Development, LLC; Red Cedar Estates Development, LLC; Red Cedar Estates Development II, LLC; River Falls Ventures, LLC; South Creek Village Development, LLC; South Glen Village Development, LLC; and Woodglen Village Development, LLC.

[6] The Limited Partnerships include the following fourteen entity Defendants, each organized as a Limited Partnership: Black Hawk Village, LP; Blue Springs Village, LP; Brandon Heights Village, LP; Brandon Heights Village II, LP; Lakewood Village, LP; Gilcrease Hills Estates, LP; Mercury Henderson Cottages, LP; Orleans Terrace, LP; Pine Crest Village, LP; Red Cedar Estates, LP; Red Cedar Estates II, LP; South Creek Village, LP; South Glen Village, LP; and Woodglen Village, LP.

Complaint having alleged only that Gandolf Group breached this agreement); (2) adding Count IV to allege fraud and misrepresentation (against all Defendants); (3) adding Count V seeking foreclosure of the security interests in the Pledged Interests; and (4) adding Count VI seeking the appointment of a receiver. (*Id.*)

Under Rule 12(b)(6), Movants now seek dismissal–with prejudice–of all claims against them, contending that Plaintiff's claims against them are "without merit." (Doc. No. 16.)

## DISCUSSION

Movants seek dismissal with prejudice on the grounds that (1) Count III must be dismissed because the Gandolf Guaranty is not enforceable; (2) Count IV must be dismissed because the Amended Complaint does not allege any misrepresentations by, or that could be attributed to, Movants; and (3) Counts V and VI must be dismissed because such claims for foreclosure on the security interests and appointment of a receiver are contingent upon Movants' liability under Counts III and IV.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint,

matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

While recent United States Supreme Court decisions addressing the Rule 12(b)(6) standard might have raised the pleading bar in certain respects, there is no requirement that a plaintiff actually prove the merits of its case in its complaint. *Twombly* and *Iqbal* have not dictated any general shift in the process of resolving claims on the merits from the summary judgment or trial stage of the proceedings to the pleading stage.

**I.      Enforcing The Gandolf Guaranty**

Movants seek dismissal of Count III–alleging that Gandolf Holdings (Gandolf Group at the time it entered the agreement) breached the Gandolf Guaranty–because Meecorp has not alleged the statutory prerequisites for a valid and enforceable guaranty by a LLC, namely, that the Gandolf Guaranty "was approved by the board of governors of the Movants." (Doc. No. 16 at 4 (citing Minn. Stat. § 322B.693).) Movants thus argue that Meecorp cannot contend that Oliver had the actual authority to execute the Guaranty. (*Id.* at 4-5.) Movants also argue that Plaintiff cannot establish Oliver had any implied or apparent authority to enter the Gandolf Guaranty or Gandolf Pledge Agreement so as to bind Movants to those contracts because Meecorp "does not allege that it relied on any manifestations by the Movants pertaining to Oliver's authority to execute" those contracts. (*Id.* at 5.)[7]

Granted, Minnesota law provides that a Limited Liability Company may guaranty another's obligation if a majority of the LLC's governors approve the transaction. Minn. Stat. § 322B.693, subd. 1. Such authorization provisions delineate a Limited Liability Company's powers. *See id.* § 322B.20 ("Powers"), subd. 1 (providing that a LLC "has

---

[7] Movants also characterize the issue in terms of whether Oliver had "authority to execute the Gandolf Guaranty and Pledge" (Doc. No. 21 at 3), but there seems to be no genuine question whether Oliver, the Chief Manager of Gandolf had the authority to sign contracts on behalf of Gandolf. Minn. Stat. § 322B.673, subd. 2. Rather, the issue as initially asserted was the separate question of whether the Gandolf board of governors then approved the guaranty that Oliver signed on Gandolf's behalf.

8

the powers set forth in this section"); *id.*, subd. 20 (providing that a LLC "may . . . guarantee an obligation . . . as provided in section 322B.693").

But Minnesota, like most jurisdictions, largely has eliminated the defense of *ultra vires* in litigation against entities such as Gandolf Holdings that have engaged in actions that allegedly were beyond the power of the entity. Here, the fact that a guaranty was not approved by the guarantor's board of governors generally does not permit the LLC to raise the lack of such approval as a defense in an action by the party to which the LLC provided the guaranty (provided the guaranty was otherwise lawful, and there is nothing here suggesting any part of the loan transaction was illegal). Minn. Stat. § 322B.22; *see also id.* § 302A.165 (abolishing defense with respect to corporations).[8]

Even if Gandolf somehow could raise an *ultra vires* defense against Meecorp, the Court notes that in the Loan Agreement–the central document of the transaction–PSC represented and warranted to Meecorp that "[t]he execution and delivery by Obligors of the Loan Documents [defined to include all of the relevant documents here], and the performance of its obligations thereunder, have been *duly authorized by all necessary action*, . . . and do not and will not: (i) require any further action, consent or approval on the part of the members or officers of the Borrower." (Doc. No. 7, Ex. A (emphasis added).)

---

[8] The statute provides three exceptions (for example, in an action by a member against the LLC to enjoin the guarantee), none of which are applicable here.

Perhaps more importantly, it further warranted that the "Loan Documents have been duly executed and delivered by Obligors and *are legal, valid and binding obligations of Obligors, enforceable against Obligors in accordance with their respective terms*." (*Id.* (emphasis added).) "Obligors" was defined to "mean the Borrower and Guarantor, and every other Person who may now or in the future have any duties, debts or liabilities to the Lender pursuant to any Loan Document." (*Id.*) "Guarantor" in turn was defined to include not only Oliver individually but also "every other Person" having "duties, debts or liabilities to the Lender pursuant to any Loan Document," and "Person" in turn was defined to include a "limited liability company." (*Id.*)

And in any event, any argument about the authority of Oliver to obligate any of the entity Defendants goes to the merits, and a Rule 12(b)(6) motion does not present the proper procedural vehicle for resolving such issues, at least not on the present record. 5B Wright & Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2004) (stating that purpose of such a motion "is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case").

Whatever changes the Supreme Court's decisions in *Twombly* and *Iqbal* might have made to Rule 12(b)(6) practice, they did not generally front-load the resolution of the merits to that pre-discovery context.[9] Summary judgment or trial remain the

---

[9] And it is clear at the very least they did not abolish the standard of notice
(continued...)

appropriate mechanisms for resolution of the merits. The decision in *B.B. & D. Investments, Inc. v. Winholdco Corporation*, on which Movants rely, illustrates this point. 1992 WL 3665 at *1 (Minn. App. Jan. 14, 1992) (reversing summary judgment in favor of defendant because "genuine issues of material fact concerning the validity and enforceability of the corporate guarantees" were involved).

## II.    Fraud and Misrepresentation

Movants also seek dismissal of Count IV–alleging fraud and misrepresentation against all Defendants–because Meecorp has alleged misrepresentations only by Oliver and Anderson, not by Movants, and because Meecorp has not alleged that Movants authorized Oliver to execute the Guaranty or Pledge Agreement. (Doc. No. 16 at 6.) Rather, Movants contend, the Amended Complaint alleges only that Oliver and Anderson were acting in their own interest (or that of PSC) such that their "alleged misdeeds cannot be imputed to the Movants." (*Id.*) Finally, Movants contend that even if Oliver was their authorized agent, "the 'adverse interest exception' rebuts the general presumption that an agent's acts are imputed to the principal" because Oliver's interests were adverse to Movants' interests such that any fraudulent actions by Oliver "cannot be imputed to" Movants. (*Id.*) Movants contend that they received no benefit from Oliver's actions,

---

[9](...continued)
pleading. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (vacating dismissal of complaint as it satisfied the standard of Rule 8(a)(2) that "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" under which "[s]pecific facts are not necessary").

which they further assert were taken in furtherance exclusively of his own interests, which were contrary to that of Movants. (Doc. No. 21 at 4.)

For much the same reasons that preclude dismissal with prejudice of Count III, Movants also cannot obtain dismissal with prejudice of Count IV. Entities such as the LLC and LP Defendants make representations largely through individual agents, such as members and governors of a LLC or partners in limited partnerships. Here, Oliver was a member and/or governor of many, if not all, of the LLC Movants and the LLC Defendants were general partners in many, if not all, of the LP Movants. Whether any of Oliver's statements, made either in his individual capacity or as an agent for an entity in which he held an ownership interest or executive position, may be attributed to any of the Movants is an important issue here. But such questions of authority and the "adverse interest" principle that Movants invoke as an exception to the general rule that a principal is bound by its agent's actions–that is, whether the interests of an individual are adverse to those of an entity on whose behalf he might have been acting–are issues on the merits not appropriate for resolution on the present Rule 12(b)(6) motion.

The Court further notes that Movants' theory that Oliver acted solely in his own personal interest, such that his actions cannot be attributed to Movants, cannot be squared with the general thrust of the fraud claim–that Oliver engaged in these actions for the benefit of the entity Defendants–entities in which he holds ownership interests (directly or indirectly) but which now seek to evade liability by distancing themselves from him.

The underlying transaction at issue directly involved several individuals (Oliver and Anderson) and entities (PSC and Gandolf Holdings) and also involves, at least indirectly, potentially many others, most of which are interconnected through ownership and/or executive control. (*E.g.*, Doc. No. 7, Ex. O.) Oliver indisputably played a central role in the overall transaction and holds key executive or managerial positions in many of the entity Defendants. He also owns interests in many of those same entity Defendants.

Oliver signed not only the contracts governing his individual obligations in the overall transaction, but also–in his position as Chief Manager of PSC, and as Chief Manager of Gandolf Holdings–the contracts governing the obligations of those entity Defendants. The various contracts at issue cross-reference each other and were entered at the same time in furtherance of the same single overall transaction. (*E.g.*, Doc. No. 7, Ex. A (defining "Loan Documents" to include all related documents and "Obligors" as "the Borrower and Guarantor, and every other Person who may now or in the future have any duties, debts or liabilities to the Lender pursuant to any Loan Document").) Accordingly, they are properly construed together. In many ways, all roads lead back to Oliver.

Whether Meecorp can establish the liability of particular Defendants–including that of those Movants that were more remote from the individuals and entities that were the parties directly contracting with Meecorp–is the ultimate issue on the merits here. But the questions Movants presently raise–and request to have resolved solely on the basis of the Amended Complaint–are better addressed after discovery (at least on summary

13

judgment if not at trial). *E.g.*, *Riley v. Vilsack*, ___ F. Supp. 2d ___, 2009 WL 3416255, *2 (W.D. Wis. Oct. 21, 2009) ("Although defendants raise a number of legitimate arguments about the merits of this claim, these arguments are better suited for the summary judgment stage. *Iqbal* and *Twombly* did not reinstate a regime of code pleading.").

The Amended Complaint, in conjunction with the various agreements attached to it, establishes the connections between the individual and entity Defendants. Moreover, it alleges various misrepresentations (statements and omissions) regarding the transaction. (Doc. No. 7, ¶¶ 96, 100, 118-19, 122-24.) The Court cannot, on the present Rule 12(b)(6) motion, dismiss the Movants with prejudice on the basis that Meecorp cannot establish that whatever misrepresentations were made cannot be attributed or imputed to Movants.

### III. Foreclosure and Receivership

Finally, Movants seek dismissal of Counts V and VI because they seek relief contingent upon the viability of the claims against Movants alleged in Counts III and IV. Because the Court denies Movants' request for dismissal with prejudice of Counts III and IV, dismissal of Counts V and VI is likewise denied.

## CONCLUSION

Movants cannot obtain dismissal with prejudice on a Rule 12(b)(6) motion by arguing fact issues that go to the merits, and they have not established that they could not, as a matter of law, be held liable to Meecorp.

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Moving Defendants' motion to dismiss (Doc. No. 17) is **DENIED**.


Dated:  January 21, 2010             s/Donovan W. Frank
                                     DONOVAN W. FRANK
                                     United States District Judge