# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Meecorp Capital Markets, LLC,

       Plaintiff,

v.

PSC of Two Harbors, LLC; Gandolf
Group LLC (f/k/a Gandolf Development, LLC,
f/k/a Red Cedar Estates, LLC); Timothy J.
Oliver; Christopher M. Anderson; PSC
Funding, LLC; Gandolf Holdings, LLC (f/k/a
Gandolf Group, LLC); Black Hawk Village
Development, LLC; Blue Springs Village
Development, LLC; Brandon Heights Village
Development, LLC; Brandon Heights Village II
Development, LLC; Lakewood Village
Development, LLC (f/k/a Evergreen Heights
Development, LLC); Gilcrease Hills Estates
Development, LLC; Green Street Estates
Development, LLC; Orleans Terrace
Development, LLC; Pine Crest Village
Development, LLC; River Falls Ventures, LLC;
South Creek Village Development, LLC; South
Glen Village Development, LLC; Woodglen
Village Development, LLC (f/k/a Alta Vista
Village Development, LLC); Black Hawk
Village, LP; Blue Springs Village, LP;
Brandon Heights Village, LP; Brandon Heights
Village II, LP; Gilcrease Hills Estates, LP;
Lakewood Village, LP (f/k/a Evergreen
Heights, LP); Mercury Henderson Cottages, LP;
Orleans Terrace, LP; Pine Crest Village, LP;
South Creek Village, LP; South Glen
Village, LP; and Woodglen Village, LP,

       Defendants,

and

SunAmerica Housing Fund 1307; SunAmerica
Housing Fund 1306; SunAmerica Housing Fund

Civil No. 09-2067 (DWF/LIB)

**FINDINGS OF FACT,
CONCLUSIONS OF LAW,
AND ORDER FOR
JUDGMENT**

1346; and SunAmerica Housing Fund 1270,

Intervenors.

---

Daniel N. Rosen, Esq., and Douglas G. Wardlow, Esq., Parker Rosen, LLC, counsel for Plaintiff.

Jarod M. Bona, Esq., and Alan L. Kildow, Esq., DLA Piper LLP, counsel for Intervenors.

Richard M. Carlson, Esq., Morris Law Group, PA, counsel for Defendants Gandolf Group, LLC; Black Hawk Village Development, LLC; Blue Springs Village Development, LLC; Brandon Heights Village Development, LLC; Brandon Heights Village II Development, LLC; Lakewood Village Development, LLC; Gilcrease Hills Estates Development, LLC; Green Street Estates Development, LLC; Orleans Terrace Development, LLC; Pine Crest Village Development, LLC; River Falls Ventures, LLC; South Creek Village Development, LLC; South Glen Village Development, LLC; Woodglen Village Development, LLC; Blue Springs Village, LP; Brandon Heights Village, LP; Brandon Heights Village II, LP; Gilcrease Hills Estates, LP; Mercury Henderson Cottages, LP; Orleans Terrace, LP; Pine Crest Village, LP; South Glen Village, LP; and Woodglen Village, LP.

Steven Theesfeld, Esq., Yost & Baill, LLP, counsel for Defendants Black Hawk Village, LP; Lakewood Village, LP; and South Creek Village, LP.

Todd H. Johnson, Esq., Oliver & Johnson, PA, counsel for Defendants PSC of Two Harbors, LLC; and PSC Funding, LLC.

Timothy Oliver, *Pro Se*, Defendant.

Christopher M. Anderson, *Pro Se*, Defendant.

---

This matter came before the Court for a trial without a jury on September 12, 13, and 14, 2011. Based upon the presentations of the parties, including the testimony and exhibits submitted during the trial, the post-trial submissions, the entire record before the

2

Court, and the procedural history of the matter, and the Court being otherwise duly advised in the premises, the Court hereby makes the following:

## FINDINGS OF FACT

1.      On June 24, 2005, Plaintiff Meecorp Capital Markets, LLC ("Meecorp") entered into a Loan Agreement with Defendant PSC of Two Harbors, LLC ("PSC of Two Harbors"), pursuant to which Meecorp agreed to loan PSC of Two Harbors $1,320,000.[1] (Pl.'s Ex. 9.)

2.      PSC of Two Harbors is a company owned (in equal 50% shares) by Defendants Timothy J. Oliver ("Oliver") and Christopher M. Anderson ("Anderson"). (Pl.'s Ex. 9.)

3.      Oliver, as Chief Manager of PSC of Two Harbors, signed the Loan Agreement.  (Pl.'s Ex. 9.)

4.      A series of agreements, guaranties, and pledges were entered into on the same date (June 24, 2005) to secure the loan and in furtherance of the same single overall loan transaction.[2]

5.      To secure repayment and as an inducement to Meecorp's making of the loan to PSC of Two Harbors, Oliver and Anderson executed and delivered to Meecorp a Guaranty (the "Joint Guaranty"), dated June 24, 2005, pursuant to which Oliver and

---

[1]      Initially, the loan was to be made to PSC Funding, LLC, as indicated by the Final Loan Offer, dated April 26, 2005, and signed on behalf of PSC Funding, LLC, by Oliver individually and as Chief Manager.  (Pl.'s Ex. 55.)

[2]      No principal has been repaid under the promissory note, which is now in default. In its March 24, 2011 Order, the Court determined the amount due and owing under the Note to be $2,366,191.88, which represents principal, fees, and interest.  (Doc. No. 108.)

Anderson absolutely and unconditionally guaranteed payment of the principal Loan

amount, interest thereon as specified in the Note, "and all other sums, other than principal

or interest, which may or shall become due and payable pursuant to the provisions of the

Note, Loan Agreement, or any other agreement, document or certificate executed and/or

delivered" by PSC of Two Harbors in connection with the Loan.  (Pl.'s Ex. 6.)  The

guaranty further requires that Oliver and Anderson reimburse Meecorp "for all expenses

(including reasonable counsel fees) incurred by [Meecorp] in connection with collection

of the Debt or any portion thereof . . . ."  (Pl.'s Ex. 6.)

6.      To secure repayment of the Note, and as an inducement to Meecorp's

making of the Loan to PSC of Two Harbors, Defendant Gandolf Group, LLC, also

executed and delivered to Meecorp a Non-Recourse Guaranty (the "Gandolf Guaranty"),

dated June 24, 2005, pursuant to which Gandolf Group, LLC, absolutely and

unconditionally guaranteed payment of the principal Loan amount, interest thereon as

specified in the Note, "and all other sums, other than principal or interest, which may or

shall become due and payable pursuant to the provisions of the Note, Loan Agreement, or

any other agreement, document or certificate executed and/or delivered" by PSC of

Two Harbors in connection with the Loan.  (Pl.'s Ex. 7.)  The guaranty further required

that Gandolf Group, LLC, reimburse Meecorp "for all expenses (including reasonable

counsel fees) incurred by [Meecorp] in connection with collection of the Debt or any

portion thereof . . . ."  (Pl.'s Ex. 7.)

7.      Oliver, along with Anderson, signed the Joint Guaranty, and Oliver, as

Chief Manager of Gandolf Group, LLC, signed the Gandolf Guaranty.  (Pl.'s Exs. 6, 7.)

8.      To secure these guaranties, Oliver and Anderson executed a Pledge Agreement, dated June 24, 2005 ("Joint Pledge Agreement"), which pledged their respective 50% membership interests in PSC of Two Harbors.  (Pl.'s Ex. 2.)

9.      In addition, Oliver executed a Pledge Agreement, dated June 24, 2005 ("Oliver Pledge Agreement"), on his own behalf, which pledged his "membership" interests in the following seventeen entities, each identified by the following percentages: Black Hawk Village Development, LLC (51%); Blue Springs Village Development, LLC (51%); Brandon Heights Village Development, LLC (51%); Brandon Heights Village II Development, LLC (51%); Evergreen Heights Development, LLC (51%);[3] Gilcrease Hills Estates Development, LLC (51%); Green Street Estates Development, LLC (51%); Orleans Terrace Development, LLC (51%); Pine Crest Village Development, LLC (51%);[4] Red Cedar Estates Development, LLC (9%); Red Cedar Estates Development, II, LLC (9%); South Creek Village Development, LLC (51%); South Glen Village Development, LLC (51%); Woodglen Village Development, LLC (51%); Gandolf Group, LLC (1%);[5] Gandolf Development, LLC (1%);[6] and PSC Funding, LLC (20%). (Pl.'s Ex. 3.)

---

[3]      Evergreen Heights Village Development, LLC, is now known as Lakewood Village Development, LLC.  (Pl.'s Ex. 183.)

[4]      Pine Crest Village Development, LLC, is also known as Gemstone Estates, LLC.

[5]      Gandolf Group, LLC, is now known as Gandolf Holdings, LLC.

[6]      Gandolf Development, LLC, is now known as Gandolf Holdings, LLC.

10.     At all relevant times, Oliver held 51% of the governance rights in each of the General Partner Defendants ("GP Defendants"),[7] as well as a 20% membership interest in PSC Funding, LLC, and a 1% financial interest in both Gandolf Group, LLC, and Gandolf Development, LLC (now Gandolf Holdings, LLC) (collectively, "Gandolf entities").  (*See, e.g.*, Defs.' Ex. 9.)

11.     Oliver is a manager or the Chief Manager of each GP Defendant.

12.     Oliver is a Governor of each GP Defendant.

13.     At all relevant times, Oliver held no individual financial rights in any of the GP Defendants.  (*See, e.g.*, Defs.' Ex. 9.)

14.     At all relevant times, Oliver held no individual interest (financial or governance) in Red Cedar Estates Development, LLC, or Red Cedar Estates Development II, LLC (collectively, "Red Cedar entities").

15.     Oliver is and at all relevant times was the Chief Manager of Gandolf Group, LLC (now Gandolf Holdings, LLC).

16.     Oliver and a Gandolf entity are, and at all relevant times were, the only two members of each GP Defendant.  Oliver and the Gandolf entity (now Gandolf Holdings, LLC) directly own 100% of the governance rights of each GP Defendant (Oliver owns 51% governance rights in each GP Defendant, and the Gandolf entity owns 49% governance rights in each GP Defendant).

17.     At all relevant times, a Gandolf entity (now Gandolf Holdings, LLC) directly owned 100% of the financial rights in each GP Defendant.

---

[7]     The LLCs that serve as the general partners of the limited partnerships that actually own the income-producing properties.

18.     At all relevant times, PSC Funding, LLC, held a 99% membership interest in Gandolf Group, LLC (now Gandolf Holdings, LLC), and Oliver held the remaining 1% membership interest.  Oliver is also the Chief Manager of PSC Funding, LLC.

19.     For each of the following thirteen GP Defendants, Oliver's pledge of his membership interest therein was separately approved in writing by the board of governors of each limited liability company:  Black Hawk Village Development, LLC (Pl.'s Ex. 26); Blue Springs Village Development, LLC (Pl.'s Ex. 27); Brandon Heights Village Development, LLC (Pl.'s Ex. 28); Brandon Heights Village II Development, LLC (Pl.'s Ex. 29); Lakewood Village Development, LLC (formerly Evergreen Heights Village Development, LLC) (Pl.'s Ex. 30); Gemstone Estates Development, LLC (also known as Pine Crest Village Development, LLC) (Pl.'s Ex. 31); Gilcrease Hills Estates Development, LLC (Pl.'s Ex. 32); Orleans Terrace Development, LLC (Pl.'s Ex. 33); Red Cedar Estates Development, LLC (Pl.'s Ex. 33); Red Cedar Estates Development II, LLC (Pl.'s Ex. 34); South Creek Village Development, LLC (Pl.'s Ex. 36); South Glen Village Development, LLC (Pl.'s Ex. 37); and Woodglen Village Development, LLC (Pl.'s Ex. 198).

20.     Oliver and Bruce E. Larson each signed the relevant "Resolutions of Board of Governors" as "Governor" of Blue Springs Village Development, LLC, Orleans Terrace Development, LLC, and Woodglen Village Development, LLC.  (Pl.'s Exs. 27, 33, 198.)  Oliver and Roger G. Peterson each signed the remaining resolutions as "Governor" of the remainder of the LLCs.  (Pl.'s Exs. 26, 28-32, 34-37.)

21.     To secure the Gandolf Guaranty, and as collateral for and to induce Meecorp to make the Loan, Gandolf Group, LLC, also executed a Pledge Agreement,

dated June 24, 2005 ("Gandolf Pledge Agreement"). Oliver executed the Gandolf Pledge

Agreement on behalf of Gandolf Group, LLC, the "pledgor," as its Chief Manager.

Pursuant to the Gandolf Pledge Agreement, Gandolf Group, LLC, pledged its

"membership" interests in the following ten limited liability companies: Black Hawk

Village Development, LLC; Brandon Heights Development, LLC; Evergreen Heights

Development, LLC; Gilcrease Hills Estates Development, LLC; Green Street Estates

Development, LLC; Pine Crest Village Development, LLC; River Falls Ventures, LLC;

South Creek Village Development, LLC; South Glen Village Development, LLC; and

Woodglen Village Development, LLC. (Pl.'s Ex. 4.) The percentage of Gandolf Group,

LLC's interest in each entity is listed as "49%," with the exception of River Falls

Ventures, LLC, which is listed as "45%." (Pl.'s Ex. 4.)

   22. The Member Control Agreements (all entered into between 2001 and 2004)

for each of the following: Black Hawk Village Development, LLC (Pl.'s Ex. 11); Blue

Springs Village Development, LLC (Pl.'s Ex. 12); Brandon Heights Village

Development, LLC (Pl.'s Ex. 13); Brandon Heights Village II Development, LLC (Pl.'s

Ex. 14); Red Cedar Estates Development, LLC (Pl.'s Ex. 15); Evergreen Heights Village

Development, LLC (Pl.'s Ex. 17); Pine Crest Village Development, LLC) (Pl.'s Ex. 21);

Gilcrease Hills Estates Development, LLC (Pl.'s Ex. 18); Green Street Estates

Development, LLC (Pl.'s Ex. 19); Orleans Terrace Development, LLC (Pl.'s Ex. 20);

South Creek Village Development, LLC (Pl.'s Ex. 23); South Glen Village Development,

LLC (Pl.'s Ex. 24); and Woodglen Village Development, LLC (formerly known as Alta

Vista Development, LLC) (Pl.'s Ex. 25) prohibit the transfer of a member's governance

interests to a non-member without the unanimous, written consent of all other members.

(Pl.'s Exs. 11-25.)  The agreements permit, however, the transfer of a member's financial rights, "in whole or in part, without the consent of the Board or any other Member." (Pl.'s Exs. 11-25.)

23.     The Amended and Restated Operating Agreement for River Falls Ventures, LLC (entered into on December 31, 2008) provides:  "The interest of each Member of the LLC constitutes the personal property of the Member but may be [sic] transferred or assigned as except with the unanimous consent of the Members provided in the Agreement."  (Pl.'s Ex. 156 at 7.)  The agreement further provides:  "No Member may transfer, sell, alienate, assign, or otherwise dispose of all or any part of his interest in the LLC . . . without the express written consent of all the Members . . . ."  (Pl.'s Ex. 156 at 10.)[8]

24.     The First Amendment and Restatement of Member Control Agreement of PSC Funding, LLC (entered into on January 1, 2003) states, in relevant part:  "Except for any transfer to an entity where a Member owns more than 50% of the ownership interests of such entity . . . , no Member shall sell, assign, give, pledge or otherwise transfer or dispose of any Units without first giving written notice . . . to the Company and the other Members."  (Defs.' Ex. 8, art. 10.)

25.     The First Amendment and Restatement of Member Control Agreement of Gandolf Group, LLC (entered into on October 2, 2000) prohibits the assignment of a member's governance interests to a non-member without the unanimous, written consent

---

[8]      The original Articles of Organization, however (dated November 9, 2001) state only that "all membership interest units of this Company are ordinary membership interest units entitled to vote . . . ."  (Pl.'s Ex. 156, art. X.)

of all other members.  (Pl.'s Ex. 40 at 7.)  The agreement permits, however, the transfer of a member's financial rights, "in whole or in part, without the consent of the Board or any other Member."  (Pl.'s Ex. 40 at 7.)[9]

26.     The Gandolf entities are in the business of planning, organizing, developing, operating, and managing multi-unit senior and affordable housing rental communities; securing low-income housing tax credits ("LIHTCs") in connection with planned senior and affordable housing rental communities; and selling the LIHTCs to third parties.

27.     Each of these affordable housing communities is owned and operated through a separate partnership. Each partnership includes a general partner—a Gandolf affiliate in the form of an LLC—and a limited partner that is an unrelated independent entity, which is the investor in these partnerships.  Each general partner holds a nominal financial interest in the partnership of anywhere from 0.001% to 0.1%, with the institutional limited partner holding the rest of the equity.  The partnerships also own certain real estate.

28.     Meecorp acknowledges, however, that it did not know that the specific Limited Partnership Defendants ("LP Defendants") even existed at the time of the loan. Meecorp, therefore, was not under any impression that the LP Defendants were involved in any way in the loan.

---

[9]     The Restated Bylaws of Gandolf Development, LLC (dated March 21, 2003) and the Restated Bylaws of Gandolf Group, LLC (dated January 1, 2001) both state: "Membership interests in the Company may be transferred only to the extent permitted by law and subject to any member control agreement."  (Pl.'s Exs. 195, 196.)

29.     The LP Defendants did not receive any proceeds or benefits from the Meecorp loan, nor did they submit to Meecorp any documentation related to the loan.

30.     A certain SunAmerica Housing Fund ("SHF") currently acts as the limited partner for each the following entities:  Woodglen Village, LP; Pinecrest Village, LP; Blue Springs Village, LP; and Orleans Terrace, LP.

31.     Woodglen Village Development, LLC, is the General Partner, and SHF 1270 is the Limited Partner of Woodglen Village, LP.  The Amended and Restated Agreement of Limited Partnership for Woodglen Village, LP (a Tennessee limited partnership) was entered into on January 28, 2005.[10]  The limited partnership agreement states that "Gandolf Development, LLC, owns and controls, and shall continue to own and control at all times during the term hereof one hundred percent (100%) of all classes of interests of Woodglen GP."  (Pl.'s Ex. 73 at 23.)  The agreement also prohibits the sale, transfer, assignment, hypothecation, or pledge of any part of the General Partner's interest "without the prior Consent of SHF" and states that "the sale, transfer, pledge, hypothecation, or assignment of an interest within the General Partner shall be deemed to constitute an event that is in violation of this Section 8.1(a)."  (Pl.'s Ex. 73 at 60.)  Thus, neither Gandolf Development, LLC—nor Gandolf Group, LLC—was permitted to pledge or transfer any part of its interest in the general partner.

32.     Pine Crest Village Development, LLC, is the General Partner, and SHF 1346 is the Limited Partner of Pine Crest Village, LP.  The Amended and Restated

---

[10]     The date of the amended partnership agreement precedes the date of the loan and supporting documents at issue in this case.  The initial partnership agreement was entered into on November 18, 2003, and named Timothy J. Oliver as the General Partner and Gandolf Development, LLC, as the Initial Limited Partner.  (Pl.'s Ex. 174 at 1.)

Agreement of Limited Partnership for Pine Crest Village, LP (a South Dakota limited

partnership) was entered into on November 18, 2005.  The limited partnership agreement

states that "Gandolf Development, LLC owns and controls, and shall continue to own and

control at all times during the term hereof one hundred percent (100%) of all classes of

interests of Pine Crest GP."  (Pl.'s Ex. 137 at 23.)  The agreement also prohibits the sale,

transfer, assignment, hypothecation, or pledge of any part of the General Partner's

interest "without the prior Consent of SHF" and states that "the sale, transfer, pledge,

hypothecation or assignment of an interest within the General Partner shall be deemed to

constitute an event that is in violation of this Section 8.1(a)."  (Pl.'s Ex. 137 at 62.)

33.     The initial Limited Partnership Agreement of Pine Crest Village, LP, was

entered into on November 3, 2004, and names Pine Crest Village Development, LLC, as

the General Partner and Gandolf Group, LLC, as the Initial Limited Partner.  (Pl.'s Ex.

136 at 1.)  The initial agreement stated:  "[N]o Limited Partner shall have the right to . . .

sell or assign his interest in the Partnership . . . without the consent of the General

Partner."  (Pl.'s Ex. 136 at 5.)  The agreement, however, permitted the General Partner to

"assign its economic interest in the Partnership without the assignee assuming the duties

of the General Partner."  (Pl.'s Ex. 136 at 5.)[11]

34.     Blue Springs Village Development, LLC, is the General Partner, and SHF

1307 is the Limited Partner of Blue Springs Village, LP.  The Amended and Restated

Agreement of Limited Partnership for Blue Springs Village, LP (a Tennessee limited

partnership) was entered into on April 12, 2006.  The amended limited partnership

---

[11]     Notably, the Pine Crest Village property is not listed on Plaintiff's Exhibits 55, 192, and 193.  (*See* Pl.'s Exs. 55, 192, 193.)

agreement states that "Gandolf Development, LLC owns and controls, and shall continue to own and control at all times during the term hereof one hundred percent (100%) of all classes of interests of Blue Springs GP."  (Pl.'s Ex. 90 at 21.)  The agreement also prohibits the sale, transfer, assignment, hypothecation, or pledge of any part of the General Partner's interest "without the prior Consent of SHF" and states that "the sale, transfer, pledge, hypothecation or assignment of an actual or beneficial interest in or within the General Partner or any entity with a direct or indirect ownership interest in the General Partner . . . shall be deemed to constitute an event that is in violation of this Section 8.1(a)."  (Pl.'s Ex. 90 at 57.)

35.     The initial Limited Partnership Agreement of Blue Springs Village, LP, was entered into on December 14, 2004, and names Blue Springs Village Development, LLC, as the General Partner and Gandolf Development, LLC, as the Initial Limited Partner.  (Pl.'s Ex. 89 at 1.)  The initial agreement stated: "[N]o Limited Partner shall have the right to . . . sell or assign his interest in the Partnership . . . without the consent of the General Partner."  (Pl.'s Ex. 89 at 5.)  The agreement, however, permitted the General Partner to "assign its economic interest in the Partnership without the assignee assuming the duties of the General Partner."  (Pl.'s Ex. 89 at 5.)

36.     Orleans Terrace Development, LLC, is the General Partner, and SHF 1306 is the Limited Partner of Orleans Terrace, LP.  The Amended and Restated Agreement of Limited Partnership for Orleans Terrace, LP (a Tennessee limited partnership) was entered into on April 12, 2006.  The amended partnership agreement states that "Gandolf Development, LLC owns and controls, and shall continue to own and control at all times during the term hereof one hundred percent (100%) of all classes of interests of Orleans

Terrace GP." (Pl.'s Ex. 130 at 21.) The agreement also prohibits the sale, transfer, assignment, hypothecation, or pledge of any part of the General Partner's interest "without the prior Consent of SHF" and states that "the sale, transfer, pledge, hypothecation or assignment of an actual or beneficial interest in or within the General Partner or any entity with a direct or indirect ownership interest in the General Partner . . . shall be deemed to constitute an event that is in violation of this Section 8.1(a)." (Pl.'s Ex. 130 at 57.)

37.     The initial Limited Partnership Agreement of Orleans Terrace, LP, was entered into on December 14, 2004, and names Orleans Terrace Development, LLC, as the General Partner and Gandolf Development, LLC, as the Initial Limited Partner. (Pl.'s Ex. 129 at 1.) The initial agreement stated: "[N]o Limited Partner shall have the right to . . . sell or assign his interest in the Partnership . . . without the consent of the General Partner." (Pl.'s Ex. 129 at 5.) The agreement, however, permitted the General Partner to "assign its economic interest in the Partnership without the assignee assuming the duties of the General Partner." (Pl.'s Ex. 129 at 5.)

38.     Black Hawk Village Development, LLC, is the General Partner, and Raymond James Tax Credit Fund XX L.L.C., is the Limited Partner of Black Hawk Village, LP. (Pl.'s Ex. 83 at 1.) The Amended and Restated Agreement of Limited Partnership of Black Hawk Village, LP (an Iowa limited partnership) was entered into on September 1, 2002. (Pl.'s Ex. 83 at 1.) The amended partnership agreement states, in relevant part: "[A] General Partner shall not have the authority to . . . assign the rights of the Partnership in specific property, for other than a Partnership purpose; or . . . sell, offer for sale, exchange or convey the Project or any portion thereof, or grant options for the

14

sale of the Project or any portion thereof" without the written consent of the Limited Partner.  (Pl.'s Ex. 83 at 26.)

39.    Lakewood Village Development, LLC, is the General Partner and Raymond James Tax Credit Fund XX L.L.C., is the Limited Partner of Lakewood Village, LP.  (Pl.'s Ex. 117 at 1.)  The Amended and Restated Agreement of Limited Partnership of Lakewood Village, LP (a North Dakota limited partnership) was entered into on June 1, 2003.  (Pl.'s Ex. 117 at 1.)  The amended partnership agreement states, in relevant part:  "[A] General Partner shall not have the authority to . . . assign the rights of the Partnership in specific property, for other than a Partnership purpose; or . . . sell, offer for sale, exchange or convey the Project or any portion thereof, or grant options for the sale of the Project or any portion thereof" without the written consent of the Limited Partner.  (Pl.'s Ex. 117 at 26.)

40.    South Creek Village Development, LLC, is the General Partner and Raymond James Tax Credit Fund XX L.L.C., is the Limited Partner of South Creek Village, LP.  (Pl.'s Ex. 160 at 1.)  The Amended and Restated Agreement of Limited Partnership of South Creek Village, LP (a South Dakota limited partnership) was entered into on January 1, 2004.  (Pl.'s Ex. 160 at 1.)  The amended partnership agreement states, in relevant part:  "[A] General Partner shall not have the authority to . . . assign the rights of the Partnership in specific property, for other than a Partnership purpose; or . . . sell, offer for sale, exchange or convey the Project or any portion thereof, or grant options for the sale of the Project or any portion thereof . . . to the General Partners or an affiliate" without the written consent of the Limited Partner.  (Pl.'s Ex. 160 at 28-29.)

41.     Brandon Heights Development, LLC, is the General Partner, Sterling Corporate Tax Credit Fund VII, L.P., is the Investment Partnership, and Sterling Corporate Services, Inc., is the Special Limited Partner of Brandon Heights Village, LP. (Pl.'s Ex. 96 at 1.)  The Amended and Restated Agreement of Limited Partnership of Brandon Heights Village, LP (a North Dakota limited partnership) was entered into on February 15, 2002.  (Pl.'s Ex. 96.)  The amended partnership agreement states, in relevant part:  "The General Partner shall not, without the Consent of the Investment Partnership, directly or indirectly . . . sell, exchange, lease, mortgage, pledge or otherwise transfer all or substantially all of the assets of the Partnership, or any portion of the Land; or . . . assign any rights in specific Partnership property for other than Partnership purposes." (Pl.'s Ex. 96 at 36-37.)

42.     Brandon Heights Village II Development, LLC, is the General Partner, Sterling Corporate Tax Credit Fund XXI, L.P., is the investment partnership, and Sterling Corporate Services, Inc., is the Special Limited Partner of Brandon Heights Village II, LP.  (Pl.'s Ex. 103 at 1.)  The First Amended and Restated Agreement of Limited Partnership of Brandon Heights Village II, LP (a North Dakota limited partnership) was entered into on July 22, 2003.  (Pl.'s Ex. 103 at 1.)  The amended partnership agreement states, in relevant part:  "The General Partner shall not, without the Consent of the Investment Partnership, directly or indirectly . . . sell, exchange, lease, mortgage, pledge or otherwise transfer all or substantially all of the assets of the Partnership, or any portion of the Land; or . . . assign any rights in specific Partnership property for other than Partnership purposes."  (Pl.'s Ex. 103 at 39-40.)

43.     Gilcrease Hills Estates Development, LLC, is the General Partner, Sterling Corporate Tax Credit Fund XXIV-F, L.P., is the Investment Partnership, Sterling Corporate Services, Inc., is the Special Limited Partner, and Greenwood Community Development Corporation is the Oklahoma Limited Partner of Gilcrease Hills Estates, LP. (Pl.'s Ex. 110 at 1.)  The First Amended and Restated Agreement of Limited Partnership of Gilcrease Hills Estates, LP (an Oklahoma limited partnership) was entered into on February 1, 2005.  (Pl.'s Ex. 110 at 1.)  The amended partnership agreement states, in relevant part:  "The General Partner shall not, without the Consent of the Investment Partnership, directly or indirectly . . . except as security for the Construction Loan or Permanent Loan sell, exchange, lease, mortgage, pledge or otherwise transfer all or substantially all of the assets of the Partnership, or any portion of the Land; or . . . assign any rights in specific Partnership property for other than Partnership purposes." (Pl.'s Ex. 110 at 40-41.)

44.     Green Street Estates Development, LLC, is the General Partner, Sterling Corporate Tax Credit Fund VII, L.P., is the Investment Partnership, and Sterling Corporate Services, Inc. is the Special Limited Partner of Mercury Henderson Cottages, LP. (Pl.'s Ex. 124 at 1.)  The First Amended and Restated Agreement of Limited Partnership of Mercury Henderson Cottages, LP (a Kentucky limited partnership) was entered into on May 14, 2001.  (Pl.'s Ex. 124 at 1.)  The amended partnership agreement states, in relevant part:  "The General Partner shall not, without the Consent of the Investment Partnership, directly or indirectly . . . sell, exchange, lease, mortgage, pledge or otherwise transfer all or substantially all of the assets of the Partnership, or any portion

of the Land; or . . . assign any rights in specific Partnership property for other than Partnership purposes."  (Pl.'s Ex. 124 at 47-48.)

45.     South Glen Village Development, LLC, is the Managing General Partner, Neighborhood Development Enterprises Inc., is the Co-General Partner, Sterling Corporate Tax Credit Fund VII, L.P., is the Investment Partnership, and Sterling Corporate Services, Inc. is the Special Limited Partner of South Glen Village, LP.  (Pl.'s Ex. 168 at 1.)  The First Amended and Restated Agreement of Limited Partnership of South Glen Village, LP (a North Dakota limited partnership) was entered into in March of 2002.  (Pl.'s Ex. 168 at 1.)  The amended partnership agreement states, in relevant part:  "The General Partner shall not, without the Consent of the Investment Partnership, directly or indirectly . . . except as security for the Construction Loan and Permanent Loan sell, exchange, lease, mortgage, pledge or otherwise transfer all or substantially all of the assets of the Partnership, or any portion of the Land; or . . . assign any rights in specific Partnership property for other than Partnership purposes."  (Pl.'s Ex. 168 at 38-39.)

46.     There is no evidence that the GP Defendants or the LP Defendants benefited or were anticipated to benefit from the Meecorp loan.

47.     Oliver was not acting on behalf of the LP Defendants in any way with regard to the Meecorp loan.

48.     The purpose of the loan was to refinance the property on the North Shore of Lake Superior owned by PSC of Two Harbors.

49.     Meecorp was first approached about making a loan in late 2004, by virtue of communications with loan broker Sean Whitlock.  Initially, the borrower was to be PSC Funding, LLC, not PSC of Two Harbors, LLC.

50.     PSC Funding, LLC, first requested a loan from Meecorp to be secured solely by a mortgage on the property in Two Harbors, Minnesota.  Meecorp then ordered and received an appraisal of the property.  The appraisal revealed that the property would not support a loan at the requested amount.

51.     Oliver and PSC Funding, LLC, then offered Oliver's interests in fourteen income-producing properties as additional collateral for and to induce Meecorp to make the Loan.  (Pl.'s Ex. 55.)

52.      In early April 2005, Oliver, Gandolf Group, LLC, and PSC Funding, LLC, provided to Meecorp a table asserting values for Oliver's interests in each of the fourteen income-producing properties, in order to induce Meecorp to make the loan.  (Pl.'s Ex. 55.)

53.     In early April 2005, acting for its 100% owners (Oliver and PSC Funding, LLC) and its Chief Manager (Oliver), and in order to induce the Loan, Gandolf Group, LLC, provided information to Meecorp regarding Oliver's alleged interests in fourteen income-producing properties, including cash flow projections, the value of Oliver's interest in each property, and the value of Oliver's interest through PSC Funding, LLC, in each property.  (Pl.'s Exs. 192, 193.)

54.     Meecorp relied on this information to analyze the value of the pledged collateral, determine the amount of loan principal the collateral would support, and make its loan offer to PSC Funding, LLC.

55.     Meecorp delivered a final loan offer letter to Oliver and PSC Funding, LLC, on April 26, 2005.  (Pl.'s Ex. 55.)

56.     Oliver and PSC Funding, LLC, executed the offer letter, which, on an attached schedule, included the "Oliver value" figures for Oliver's interest in each of the fourteen properties and supporting financial information previously provided by PSC Funding, LLC, Oliver and Gandolf Group, LLC.  Oliver and PSC Funding, LLC returned the executed final loan offer to Meecorp on April 28, 2005.  (Pl.'s Ex. 55.)

57.     The information PSC Funding, LLC, Oliver and Gandolf Group, LLC, provided in early April 2005 and in connection with the final loan offer's schedule of additional collateral, also included false information regarding the nature of Oliver's ownership interest in the real-property developments related to the pledged companies.

58.     PSC Funding, LLC, Oliver and Gandolf Group, LLC, were aware, at the time they generated valuation figures for Oliver's pledged interests and Oliver and Gandolf Group, LLC, transmitted those values to Meecorp, that the figures had no basis in fact and did not in any way represent the actual value of Oliver's financial interests in the properties.

59.     Oliver executed the loan agreement, promissory note and mortgage, as well as the pledge agreements and guaranties on June 24, 2005.  The loan was not funded until on or after June 29, 2010.

60.     The parties communicated with each other both directly and through counsel (William Munday for Meecorp, and Sean Whitlock for Oliver, PSC Funding, LLC, and Gandolf Group, LLC).  (Pl.'s Exs. 56-69.)

61.     The pledge agreements executed by Oliver and Gandolf Group, LLC, represent and warrant that the interests pledged constitute the entirety of each pledgor's membership interests in each pledged entity, and that the interests are "free of any and all liens" and that the liens granted to Meecorp pursuant to the pledge agreements "constitute valid, perfected first priority lien[s] on the Collateral, enforceable as such against all creditors of the Pledgor[s] and any Persons purporting to purchase any Collateral from the Pledgor[s]."  (Pl.'s Exs.  3, 4 at 2-3.)

62.     The limited partnership agreements for each LP Defendant restrict the pledging or transfer of any interest in the limited partnership's general partner entity.  At no time before the funding of the loan did PSC Funding, LLC, Oliver, Gandolf Group, LLC, or anyone else disclose the existence of these restrictions (or the limited partnership agreements containing the restrictions, or the existence of the LP Defendants themselves) to Meecorp.

63.     At no time before the funding of the loan did PSC Funding, LLC, Oliver or Gandolf Group, LLC, reveal to Meecorp that each GP Defendant entity has only a 0.1% or smaller interest in each LP Defendant that actually owns the land.

64.     PSC Funding, LLC, Oliver and Gandolf Group, LLC, led Meecorp to believe that Oliver's pledge of his membership interests would be an effective and enforceable pledge of the totality of Oliver's membership interests in the income-producing properties, in part by representing and warranting the same in the Oliver Pledge Agreement.

65.     PSC Funding, LLC, Oliver and Gandolf Group, LLC, led Meecorp to believe that Gandolf Group, LLC's, pledge of its interests in nine GP Defendants, in

addition to Oliver's pledge of his membership interests in the same entities, would provide Meecorp with an effective and enforceable pledge of 100% of the full membership rights in each of those entities.

66.     Gandolf Group, LLC, Oliver, and PSC Funding, LLC, provided documents in response to Meecorp's request for information regarding "income producing properties," knowing that the documents, including member control agreements, certificates of good standing, and K-1s, did not in fact relate to any income-producing properties, but only related to the general partners of the limited partnerships that in fact owned the real estate projects at issue.

67.     Neither the GP Defendants nor the LP Defendants made any misrepresentations to Meecorp.

68.     Defendants presented no evidence at trial with respect to their counterclaims.

69.     Any conclusion of law which is deemed a finding of fact is incorporated herein as such.

Based upon the above findings of fact, the Court hereby makes the following:

## CONCLUSIONS OF LAW

**A.      The Pledge Agreements**

1.     Because PSC of Two Harbors defaulted on repayment of the loan, Oliver defaulted under the Joint Guaranty, and Gandolf Group, LLC, defaulted under the Gandolf Guaranty, Meecorp is entitled to judgment against Oliver for claim, delivery and foreclosure of Oliver's pledged interests to the extent the pledges of each of those interests are valid and enforceable.

2.     The Oliver Pledge Agreement, executed by Oliver in his individual capacity and dated June 24, 2005, is a valid and enforceable pledge only insofar as Oliver pledged his financial interests in Gandolf Group, LLC (1%) and Gandolf Development, LLC (1%).  Meecorp is entitled to claim, delivery, and foreclosure of those pledged interests.

3.     Meecorp has failed to demonstrate that Oliver provided written notice to PSC Funding, LLC, and all of its members, as required by PSC Funding, LLC's, member control agreement, before pledging his financial interest in the company to Meecorp. (Defs.' Ex. 8, art. 10.)  Oliver's pledge of his interest in PSC Funding, LLC, is thus not enforceable.

4.     The relevant member control agreements for the GP Defendants prohibit the transfer of governance interests without the unanimous, written consent of all other members.  The Resolutions of the Boards of Governors consenting to Oliver's pledge are insufficient to satisfy the requirements of the various member control agreements. Meecorp has failed to demonstrate that Oliver obtained unanimous, written consent to the pledge of his interests from all the members of each GP Defendant (Oliver and a Gandolf entity).[12]  Thus, the Oliver Pledge Agreement is not enforceable to the extent Oliver pledged his governance interests in any of the GP Defendant entities.

5.     Additionally, Oliver had no interest (financial or governance) in Red Cedar Estates Development, LLC, or Red Cedar Estates Development II, LLC.  Consequently,

---

[12]     Although Oliver signed each resolution as a governor of the LLC, no signature appears on behalf of a Gandolf entity.

the Oliver Pledge Agreement is invalid insofar as it pledges Oliver's interests in the Red Cedar entities.

6.      Pursuant to the applicable member control agreements, a member of each of the GP Defendants may transfer its financial rights apart from its governance rights. Still, the relevant limited partnership agreements prohibited the pledge of Gandolf Group, LLC's, financial interests in the LP Defendants.[13]  Moreover, the relevant member control agreements for the GP Defendants prohibit the transfer of governance interests without the unanimous, written consent of all other members.  Therefore, the Gandolf Pledge Agreement, executed by Oliver in his capacity as Chief Manager of Gandolf and dated June 24, 2005, is not a valid and enforceable pledge of Gandolf Group, LLC's, membership interests (financial or governance) in any of the limited liability companies identified in the pledge agreement.

**B.      Fraud Claims Against PSC Funding, Gandolf, and Oliver**

7.      PSC Funding, LLC, and Oliver, acting at times for themselves, and at times for and through Gandolf Group, LLC, made fraudulent misrepresentations regarding the value, nature and ownership of the membership interests pledged by Oliver and Gandolf Group, LLC, to Meecorp as collateral for and to induce Meecorp to make the loan.

8.      The misrepresented facts were material; were past and present facts susceptible of knowledge; and were known to PSC Funding, LLC, Oliver and Gandolf Group, LLC, to be false and misleading at the time the misrepresentations were made.

---

[13]      Additionally, Meecorp has not demonstrated that the pledge of Gandolf's interest in River Falls Ventures, LLC, is valid and enforceable.

9.     PSC Funding, LLC, and Oliver made misrepresentations in the final loan offer executed by PSC Funding, LLC, and Oliver; Gandolf Group, LLC, at the direction and for the benefit of its 100% owners (PSC Funding, LLC, and Oliver), supplied financial and valuation information to Meecorp in connection with PSC Funding, LLC, and Oliver's offer of additional collateral in the final loan offer; and Gandolf Group, LLC, Oliver, and PSC Funding, LLC, provided documents in response to Meecorp's request for information regarding "income producing properties," knowing that the documents, including member control agreements, certificates of good standing, and K-1s, did not in fact relate to any income-producing properties, but only related to the general partners of the limited partnerships that in fact owned the real-estate projects at issue.

10.    PSC Funding, LLC, Oliver, and Gandolf Group, LLC, made and/or directed those misrepresentations to be made with the intent and purpose of inducing Meecorp to make the loan.

11.    In particular, Oliver and Gandolf Group, LLC, fraudulently misrepresented that, together, they owned a group of limited liability companies that actually owned income-producing properties and that their respective pledges constituted valid and enforceable pledges of their claimed financial interests in the GP Defendants.

12.    Additionally, Oliver, Gandolf Group, LLC, and PSC Funding, LLC, falsely represented the values of Oliver and Gandolf Group, LLC's, financial interests in the projects, submitted as Plaintiff's Exhibits 55 and 192.  (Pl.'s Exs. 55 and 192.)  Exhibit 192 represents that Oliver owns interests in the properties through "PSC Funding" and an "Oliver Entity."  (Pl.'s Ex. 192.)  No such Oliver entity exists.  Exhibit 55 contains

representations of the financial value of Oliver's interests, however, Oliver owned no

financial interest independent of his 20% interest in PSC Funding, LLC.  The information

was provided by Oliver, PSC Funding, LLC, and Gandolf Group, LLC.  (Tr. Vol. I at

112-130.)

13.     Meecorp relied upon Oliver, Gandolf Group, LLC, and PSC Funding,

LLC's, fraudulent misrepresentations in determining that it would make the loan.

14.     Consequently, Oliver, PSC Funding, LLC, and Gandolf Group, LLC (now

Gandolf Holdings, LLC) are jointly and severally liable to Meecorp for fraud.

**C.     Fraud Claims Against GP Defendants and LP Defendants**

15.     The Court concludes that the LP Defendants and GP Defendants are not

liable to Meecorp for fraud.

16.     The LP Defendants and GP Defendants made no false representations of

past or present material fact that induced Meecorp to act in reliance thereon.  *See W.*

*Contracting Corp. v. Dow Chem. Co*., 664 F.2d 1097, 1100-01 (8th Cir. 1981).

17.     Any actions by Oliver were not within the scope of the limited partnerships

or limited liability companies, and indeed, harmed the LP Defendants and GP

Defendants.

18.     The GP Defendants and LP Defendants did not receive any proceeds from

the loan and did not benefit from the loan or fraudulent statements.

19.     Meecorp issued the loan to PSC of Two Harbors to refinance a property on

the North Shore of Lake Superior. The loan upon which the fraud was based was outside

the scope and purpose of the limited partnerships and limited liability companies.

20.     The fraud perpetrated by Oliver, Gandolf Group, LLC, and PSC Funding, LLC, was not committed on behalf of the GP Defendants or LP Defendants.

21.     The fraud went against the interests of the LP Defendants and GP Defendants.

22.     Oliver acted in self-interest and for the benefit of PSC Funding, LLC, and PSC of Two Harbors and against the interests of the LP Defendants and GP Defendants. Thus, the fraud will not be imputed to the LP Defendants and GP Defendants. *See United States v. One Parcel of Land*, 965 F.2d 311, 317 (7th Cir. 1992).

23.     Additionally, Meecorp was not aware that the LP Defendants existed at the time it made the loan. Thus, Meecorp cannot have believed that Oliver was acting on behalf of the LP Defendants at the time of the loan transaction. *See Truck Crane Serv. Co. v. Barr-Nelson, Inc.*, 329 N.W.2d 824, 826 (Minn. 1983). There is no evidence that the LP Defendants provided Oliver with apparent authority for the fraudulent misrepresentations. *See Lustgraaf v. Behrens*, 619 F.3d 867, 882 (8th Cir. 2010); *Powell v. MVE Holdings, Inc*., 626 N.W.2d 451, 458 (Minn. Ct. App. 2001); *Lyman Lumber Co. v. Three Rivers Co.*, 400 N.W.2d 811, 813 (Minn. Ct. App. 1987); *McGee v. Breezy Point Estates*, 166 N.W.2d 81, 89 (Minn. 1969). Consequently, Meecorp has not demonstrated that Oliver had apparent authority to bind the LP Defendants.

24.     Any conclusion of law which is deemed a finding of fact is incorporated herein as such.

Based upon the above findings of fact and conclusions of law, the Court hereby enters the following:

## ORDER FOR JUDGMENT

In light of the foregoing, and all the files, records and proceedings herein, it is

**HEREBY ORDERED** that:

1.      Consistent with this Court's March 24, 2011 Order (Doc. No. [108]), Meecorp Capital Markets, LLC, is entitled to judgment against Defendant PSC of Two Harbors, LLC, on its "Breach of the Note" claim (Count I of the Amended Complaint).

2.      Consistent with this Court's March 24, 2011 Order (Doc. No. [108]), Meecorp Capital Markets, LLC, is entitled to judgment against Defendants Timothy J. Oliver and Christopher M. Anderson on its "Breach of the Joint Guaranty" claim (Count II of the Amended Complaint).

3.      Meecorp Capital Markets, LLC, is entitled to judgment against Defendant Gandolf Group, LLC (now known as Gandolf Holdings, LLC) on its "Breach of the Gandolf Guaranty" claim (Count III of the Amended Complaint).

4.      Meecorp Capital Markets, LLC, is entitled to judgment, in part, on its "Fraud – Misrepresentations and Failures to Disclose" claim (Count IV of the Amended Complaint) as follows:

a.      Defendants Timothy J. Oliver, PSC Funding, LLC, and Gandolf Group, LLC (now known as Gandolf Holdings, LLC) are jointly and severally liable to Meecorp Capital Markets, LLC for fraud.

b.      Meecorp Capital Markets, LLC's, claims against Black Hawk Village Development, LLC; Blue Springs Village Development, LLC; Brandon Heights Village Development, LLC; Brandon Heights Village II

Development, LLC; Lakewood Village Development, LLC (f/k/a

Evergreen Heights Development, LLC); Gilcrease Hills Estates

Development, LLC; Green Street Estates Development, LLC; Orleans

Terrace Development, LLC; Pine Crest Village Development, LLC; River

Falls Ventures, LLC; South Creek Village Development, LLC; South Glen

Village Development, LLC; Woodglen Village Development, LLC (f/k/a

Alta Vista Village Development, LLC); Black Hawk Village, LP; Blue

Springs Village, LP; Brandon Heights Village, LP; Brandon Heights

Village II, LP; Gilcrease Hills Estates, LP; Lakewood Village, LP (f/k/a

Evergreen Heights, LP); Mercury Henderson Cottages, LP; Orleans

Terrace, LP; Pine Crest Village, LP; South Creek Village, LP; South Glen

Village, LP; and Woodglen Village, LP are **DISMISSED WITH**

**PREJUDICE**.

5.     Meecorp Capital Markets, LLC, is entitled to judgment, in part, on its

"Claim, Delivery and Foreclosure of Security Interests" claim (Count V of the Amended

Complaint) as follows:

a.     Meecorp is entitled to claim, delivery, and foreclosure of

Oliver's pledged interests only insofar as Oliver pledged his financial

interests in the following entities:  Gandolf Development, LLC (1%); and

Gandolf Group, LLC (1%).

b.     Meecorp is not entitled to claim, delivery, and foreclosure of

any of the interests pledged by Gandolf Group, LLC.

6.      Consistent with this Court's March 24, 2011 Order (Doc. No. [108]),

Meecorp Capital Markets, LLC's "Appointment of Receiver" claim (Count VI of the

Amended Complaint) is **DISMISSED WITH PREJUDICE**.

7.      All counterclaims against Meecorp Capital Markets, LLC are **DISMISSED**

**WITH PREJUDICE**.

8.      Consistent with this Court's March 24, 2011 Order (Doc. No. [108]),

Meecorp Capital Markets, LLC, is entitled to judgment in the total amount of

$2,366,191.88, an amount which represents principal, fees, and interest owing under the

Note as determined by the Court.

9.      Consistent with this Court's June 2, 2011 Order (Doc. No. [120]), Meecorp

Capital Markets, LLC, is entitled to attorney fees in the amount of $35,199.87 and costs

in the amount of $1,441 with respect to Counts I and II of its Amended Complaint.

10.     Any motion for additional attorney fees shall be filed no later than fourteen

(14) days after the entry of this Order. Any party seeking to respond to such a motion

may do so within seven (7) days after the filing of the motion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  December 12, 2011              s/Donovan W. Frank
                                       DONOVAN W. FRANK
                                       United States District Judge